**MARCIA HURD**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 1478
Billings, MT 59103
2929 Third Ave. North, Suite 400
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6989

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | CR 06-01-BU-DWM |
| vs. | |
| STEPHEN QUINN, | OFFER OF PROOF |
| Defendant. | |

Plaintiff, United States of America, by and through its counsel of record, Marcia Hurd, Assistant United States Attorney for the District of Montana, hereby files its Offer of Proof.

## THE CHARGE

The defendant, STEPHEN QUINN, is charged by Indictment with Coercion & Enticement, Interstate Transportation of a Minor and Violation of the Communications Decency Act, in violation of 18 U.S.C. §§ 2422(a), 2422(b), 2423(a) and 47 U.S.C. §§ 223(a)(1)(C) and (a)(1)(E).

## PLEA AGREEMENT

There is a plea agreement in this case.  Defendant will plead guilty to Counts III, IV and V; Counts I and II will be dismissed at the time of sentencing.

## ELEMENTS OF THE CHARGES TO WHICH HE WILL ENTER A PLEA

In order for the defendant to be found guilty of Interstate Transportation of a Minor, pursuant to 18 U.S.C. § 2423(a), the United States must prove each of the following elements:

> **TRANSPORTATION OF A MINOR - Count III**
> First, the defendant knowingly transported an individual in interstate commerce,
>
> Second, the defendant did so with the intent that the individual engage in any sexual activity for which any person can be charged with a criminal offense; and
>
> Third, the individual was under the age of eighteen years at the time.

In order for the defendant to be found guilty of Violation of the Communications Decency Act, pursuant to 47 U.S.C. § 223(a)(1)(C), the United States must prove each of the following elements:

> **VIOLATION OF THE COMMUNICATIONS DECENCY ACT
> - Count IV**

First, the defendant made a telephone call, or utilized a telecommunications device, whether or not a conversation or communication ensued;

Second, while doing so the defendant did not disclose his identity; and

Third, the defendant did so with intent to annoy, abuse, threaten, or harass any person at the called number or who received the communication.

In order for the defendant to be found guilty of Violation of the Communications Decency Act, pursuant to 47 U.S.C. § 223(a)(1)(E), the United States must prove each of the following elements:

**VIOLATION OF THE COMMUNICATIONS DECENCY ACT - Count V**

First, the defendant made repeated telephone calls or repeatedly initiated communication with a telecommunications device;

Second, conversation or communication ensued; and

Third, the defendant did so solely to harass any person at the called number or who received the communication.

## PENALTY

The charge in Count III carries a mandatory minimum of five years and a maximum of 20 years imprisonment, $250,000 fine, and a lifetime of supervision. The charges in Counts IV and V each carry a maximum of 2 years imprisonment, $250,000 fine, and one year of supervised release.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

Quinn came under investigation by the FBI in May of 2005, when the agency received information that he had engaged in a sexual relationship with a juvenile male. Quinn, d/o/b –/–/61, met K., d/o/b –/–/88, in a gay chat room on the Internet in June of 2003, when K. was fifteen. Quinn resided in Illinois, and K. in Montana. Quinn was aware of K's age. The Internet relationship included sexually explicit conversations and webcam sexual activity. In July of 2004, Quinn traveled to Montana and engaged in sexual activity with K., then age 16. The Internet relationship continued after the Montana trip.

In August of 2004, Quinn flew K. (then age 16) to Illinois so the two could attend a concert in Wisconsin. Quinn picked K. up in Illinois and drove him to Wisconsin where they attended the concert and engaged in sexual activity. K. was under the legal age of consent in Wisconsin, which is 18; K. was under the legal age of consent in Illinois, which is 17. Quinn and K. returned to Illinois, where K. flew home to Montana.

In approximately October of 2004, Quinn flew to Montana again to visit K., where they again engaged in sexual activity. Quinn also purchased various things for K. including telephone calling cards, a digital camera, and other items. Quinn purchased alcohol for the two to drink when they were together. In NOVEMBER of 2004, Quinn accused K. of "cheating" on him and in December of 2004, K. terminated the relationship with Quinn.

On May 6, 2005, Quinn called K.'s mother in Park County, Montana, via telephone, falsely identifying himself as Curtis Wayne. Quinn told K.'s mother than K. had been luring older men on the Internet for sex, and told her detailed information about each of her children and about K.'s physical attributes. Quinn made the call to

annoy, abuse, threaten or harass both K. and his mother.  Quinn spoke with K.'s mother again on May 17, 2005, in a telephone conversation recorded by the FBI.

Quinn then began contacting K. by telephone, email and text messaging.  Those repeated emails and messages were captured by the FBI and they included insults, threats and repeated references to their failed sexual relationship.  Quinn made the repeated contacts solely to harass K.

The FBI located documentation from the airlines, hotels and credit cards that confirmed the Illinois/Wisconsin trip.  Quinn's supervisor at his place of employment in Illinois identified K. as a person that Quinn brought to the job in the summer of 2004 and introduced him as his nephew.  The FBI also found letters from Quinn discussing the trip and the relationship and a photograph of K. that was taken in front of the hotel in Wisconsin.  Also found were chat logs showing Quinn's desire to engage in sexual activity with K. and envelopes from Quinn's employer that he used to send letters to K.

When questioned, Quinn admitted that he had traveled to Montana to see K. and that K. had traveled to Illinois and the two together to Wisconsin but claimed that the only physical contact he had was limited to hugs and kisses on the cheek.  Quinn also claimed that he did not know K. was only 16 when they engaged in sexual activity; however, various emails between the two clearly document Quinn's knowlege of K. age. Quinn admitted that he had kept the relationship with K. secret from his wife, but that she had accidentally found out about it when she read a Yahoo! messenger conversation between the two.

DATED this 30th day of May, 2006.

                                  WILLIAM W. MERCER
                                  United States Attorney

                                  __/s/ Marcia Hurd_____
                                  MARCIA HURD
                                  Assistant U.S. Attorney