JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
Missoula Branch Office
P.O. Box 9380
Missoula, MT 59807
Phone: (406) 721-6749

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| UNITED STATES OF AMERICA, | Crim No. CR-06-01-BU-DWM |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| STEVEN QUINN, | |
| Defendant. | |

### I. INTRODUCTION

STEVEN QUINN comes before the Court for sentencing on the offenses of Interstate Transportation of a Minor and Violations of the Communications Decency Act as charged in the Indictment. There is a five year mandatory minimum sentence, which Mr. Quinn challenges on constitutional grounds. The United States Probation Officer has calculated a Guideline range of 57-71 months (Total Offense Level 25; Criminal History Category II). He agrees with the PSR Guidelines calculations.

If the Court applies the mandatory minimum, Mr. Quinn requests a sentence of five years followed by five years of supervised release. If the Court holds the mandatory minimum to be unconstitutional, Mr. Quinn requests a time-served sentence followed by five years of supervised release.

## II. ARGUMENT

A.   Objection to Factual Assertions in the PSR

As detailed in the addendum to the PSR, the PSR review of the offense conduct presents a sex-focused, accusatorial account of the relationship at issue and thus fails to convey the full nature of the relationship. While Mr. Quinn erred in his judgment, he also tried to help KV deal with numerous, continuing life issues. Mr. Quinn's response to the PSR fills in some of the details omitted from the PSR and begins to provide the full context of the relationship.

B.   No Dispute With Calculation of Guideline Sentencing Range.

Mr. Quinn agrees with PSR's Guideline calculations.

C.   The Mandatory Minimum is Unconstitutional.

Mr. Quinn has pled guilty to transporting a minor in interstate commerce to engage in sexual activity for which he could be charged under Wis. Stat. § 948.09. That Wisconsin offense is a misdemeanor. Thus, a federal five year mandatory minimum is predicated on a state misdemeanor offense.

Mr. Quinn believes that this disharmony violates due process and federalism and results in disproportionate punishment in violation of the 8th Amendment.

It is simply unfair. Due process imposes on courts "an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice[.]" *Adamson v. California*, 332 U.S. 46, 67 (1947) (Frankfurter, J., concurring).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Supreme Court has emphasized that due process attaches to sentencing proceedings:

> [T]he sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause.  Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding[.]

*Gardner v. Florida*, 430 U.S. 349, 358 (1977) (citations omitted).

Predicating a federal five year mandatory sentence on a state misdemeanor violates federalism.  It creates *de jure* disparity: had Mr. Quinn been prosecuted in Wisconsin state court, it would be for a misdemeanor offense.  It fosters jurisdictionally contingent arbitrariness, at bottom constituting a constitutionally impermissible encroachment by the federal government on the prerogatives of the State of Wisconsin.

Finally, it imposes a grossly disproportionate punishment, which violates the 8th Amendment.  See, e.g., *Hutto v. Finney*, 437 U.S. 678, 685 (1978).  The Wisconsin legislature deliberately decided that the sexual activity here merited misdemeanor punishment.  The government should not be permitted to high-jack that decision and transform it into a five year mandatory minimum sentence.  Doing so violates the 8th Amendment's ban on cruel and unusual punishment.

  D. <u>18 U.S.C. § 3553(a) sentencing considerations</u>.

Should the Court uphold the mandatory minimum, a five year sentence is appropriate for the following reasons.  Alternatively, for the same reasons, the Court should impose a time-served sentence.

*United States v. Booker,* 543 U.S. 220 (2005), establishes a new, independent limit on the sentence that may be imposed.  The primary sentencing mandate of 18 U.S.C. § 3553(a) states

that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment - justice, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a) (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is statutorily prohibited from sentencing – even when a greater sentence is recommended by the Sentencing Guidelines, which, per § 3553(a), are statutorily subordinate to the parsimony principle. See *United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

The requested sentence(s) incorporate the nature and circumstances of the offense (including the full scope of the relationship), and the history and characteristics of Mr. Quinn, as detailed below. 18 U.S.C. § 3553(a)(1).

They reflect the seriousness of the offense, promote respect for the law, and provide just punishment, particularly because of the misdemeanor predicate and the impact of the offense, prosecution, house arrest, and publicity on Steve and his family – this impact is evidenced in the Acceptance of Responsibility Statement submitted by him and the letter submitted to the Court by his wife, as well as noted and detailed in the PSR. 18 U.S.C. § 3553(a)(2)(A).

The requested sentence(s) deter criminal conduct. Wisconsin deems the activity at issue to be a misdemeanor offense. The embarrassment and agony suffered by Mr. Quinn and his family is sufficiently deterrent, particularly for Mr. Quinn, who is extremely unlikely to ever again engage in such conduct. 18 U.S.C. § 3553(a)(2)(B) and (C). As his wife explains in her letter to the Court.

> *. . . I do know that this was totally out of character for Steve and I am confident by his acceptance and admission that he will <u>never</u>*

> *involve himself in this type of situation again.  He is truly a very caring and well-meaning person; he lost direction and made many bad decisions during a very personal, stressful and confusing time of his life.  I plead with the court to find it in their heart to be as lenient as possible in considering his sentence and ensure his safety during his incarceration.  Society needs the man I know Steve Quinn is and his children need him also.*

He sought out counseling.  He has been very cooperative.  PSR ¶ 67.  He has proven that he can be treated in the community.  18 U.S.C. § 3553(a)(2)(D).

During his adult-life Steve has demonstrated that he is a positive community member.  A loving father of two children, he is a dedicated and involved parent.  He speaks in detail about the school lives of his children, and he supports them in not only their academic endeavors, but also their dance lessons, sports, and Catholic CCD lessons.  He is a patient father yet a fair disciplinarian.  He speaks of his children with great fondness.  He has worked hard and maintained steady employment in order to provide for his children and his wife.  Steve has a litany of friends that trust him and rely on him in times of need.  They describe him as a compassionate man that they trust implicitly with their own children.

His focus on his family is evident in the sentencing letters submitted to the Court:

| Melissa Parages | *Steve Quinn is a loving father of two great children.  He is very helpful and dependable when a crisis situation occurs.  On two different occasions, Steve picked up my oldest daughter when her sister was very sick.  My youngest daughter was very ill and needed urgent care.  We ended up being in the emergency room for several hours because she was severely dehydrated.  My daughter, while in the care of Steve Quinn, was very nervous about her sister's ill health.  Steve was extremely compassionate and caring towards her and spent much of his time playing board games and interacting with the kids.  This helped my daughter tremendously, as it took her mind away from worrying.* |
|---|---|
| James Kramer | *I don't believe Steve is of any threat to the local community.  No more than I or any other citizen.  I would trust him with my kids.  And I guess these days, that's saying a lot.  I don't think that Steve would be likely to be in trouble with the law in the future.  If you knew Steve you would know this to be true.* |

| Julie Sola | *. . . Throughout the discussion with my husband, it became evident that Steve was deeply remorseful.  His primary concern was the well being of his wife, his children, and other family and friends.  The news of these charges stunned both me and my husband.  The nature of these charges is <u>completely</u> out of character for the man we know.* |
|---|---|
| Rosa Wilcheski | *I questioned my son when I was made aware of this legal situation and he was as shocked as I was.  My son was never treated disrespectfully or inappropriately in the entire time that he has know Steve.  Steve was and always will be 'honorary' Uncle Steve to my children.  To this day, I would not hesitate to have Steve interact in any way with my children, I would have complete confidence he would never harm them and that his behavior would be nothing less than exemplary with them.* |

Importantly, individuals who know him far better than anyone in the court system trust Steve with their most precious being – their children.  As evidenced by their statements, Steve is deeply remorseful.  This was an isolated act of poor judgment.  He has responded by working to ensure the integrity of his family.  Indeed, since he graduated from high school in 1979, he has been gainfully employed, permitting his wife to be a stay-at-home mom; only the current offense and the resulting prosecution interfered with providing for his family.

The conclusions of Steve's mental health provider corroborate what those close to him know.

> [Steve] expresses ongoing confusion about his identity and regrets about some of the choices he has made.  He shows deep remorse for the enduring impact his actions have had on his family.  The defendant expressed "despair at the fact that a dimension greater than mere sexual interest, that of strongly caring for and worrying about the young man he befriended, remains unacknowledged.  He readily admits he made a terrible mistake by staying in touch once he found out this person was so young. . . ." [He is] a very responsible and reflective person who wants to make sense of his life and make amends to those around him.  He struggles understanding "how he became so emotionally involved [with KV] as to lose sight of all reasonable behavior."

PSR ¶ 67.

E.   <u>Witnesses</u>.

Rather than calling witnesses at trial, Mr. Quinn will submit a video of his family taken at his home; the video is being duplicated and when that is completed, it will be filed with the Court.

F.   <u>Recommended Sentence</u>

Mr. Quinn requests the minimum sentence, either five years or time-served. For the reasons above, life-time supervision is excessive. He requests a supervised release term of five years. Finally, he requests that he be permitted to self-report should the Court impose a prison term.

RESPECTFULLY SUBMITTED this 20th day of September, 2006.

STEVEN QUINN

By: */s/ John Rhodes*
JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
P.O. Box 9380
Missoula, MT 59807-9380
Counsel for Defendant

**CERTIFICATE OF SERVICE**
**L.R. 5.2(b)**

I hereby certify that on September 20, 2006, a copy of the foregoing document was served on the following persons by the following means:

<u> 1,2 </u>   CM-ECF

<u>    </u>   Hand Delivery

<u>  4  </u>   Mail

<u>    </u>   Overnight Delivery Service

<u>    </u>   Fax

<u>  3  </u>   E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. MARCIA HURD
   Assistant United States Attorney
   P.O. Box 1478
   Billings, MT 59103
       Counsel for the United States of America

3. JEAN KEILEY
   United States Probation Office
   P.O. Box 7675
   Missoula, MT 59807
       United States Probation Officer

4. STEVE QUINN
   4414 N. Newcastle Avenue
   Harwood Heights, IL 60706
       Defendant

                                                                            */s/ John Rhodes*
                                                                       FEDERAL DEFENDERS OF MONTANA